**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PENNY HERRICK and
DANIEL SANCHEZ,

Plaintiffs,

v. Case No. 8:25-cv-1700-KKM-AAS

SANFORD ELECTRIC
COMPANY II, INC., and
ROBIN NEILEN,

Defendants.

---

**ORDER**

Penny Herrick and Daniel Sanchez sue their former employers, Sanford Electric Company II, Inc., and Robin Neilen, under the Fair Labor Standards Act (FLSA) for failure to pay overtime wages. Compl. (Doc. 1). Herrick and Sanchez allege that between October 2024 and January 2025, they routinely worked overtime for which the defendants did not compensate them. *Id.* ¶¶ 13–33. The parties jointly move for approval of their proposed settlement of the plaintiffs' FLSA claim.[1] Mot. (Doc. 36); *see Lynn's Food Stores, Inc. v. U.S. Dep't of Lab.*, 679 F.2d 1350, 1352–53 (11th Cir. 1982). For the below reasons, I deny the motion without prejudice.

[1] In January 2026, the Clerk entered default against defendant Sanford Electric Company II, Inc. (Doc. 21). The plaintiffs were advised that they "need not move for default judgment until the liability of defendant Robert Neilen is resolved." (Doc. 26).

Under the proposed settlement agreements, Herrick and Sanchez agree to settle their FLSA claims for $200 each representing unpaid wages and liquidated damages. *See* Herrick Agreement (Doc. 36-1) ¶ 2(a); Sanchez Agreement (Doc. 36-2) ¶ 2(a). Herrick and Sanchez also agree to settle contract claims for $800 each, which allegedly represents breach of contract damages.[2] *See* Herrick Agreement ¶ 2(b); Sanchez Agreement ¶ 2(b). In exchange, Herrick and Sanchez release, and covenant not to sue for, "any and all claims, actions, causes of actions, rights, demands, debts, damages including compensatory and punitive, liquidated damages, accountings, costs, claims of reimbursement, claims of interest, awards of attorney's fees and expenses of whatever nature, whether known or unknown from the beginning of time to the date of the execution of this Agreement." Herrick Agreement ¶¶ 4–5; Sanchez Agreement ¶¶ 4–5. The defendants also agree to pay Herrick and Sanchez each $1,500 in attorney's fees and costs, Herrick Agreement ¶ 2(c)–(d); Sanchez Agreement ¶ 2(c)–(d), which the parties "separately negotiated" without regard to other payments, Mot. ¶ 11.

Two issues prevent approval of the proposed settlement agreements.

[2] The settlement agreements are internally inconsistent on this point. The second paragraph of each agreement lists the "damages for alleged breach of contract" as $500. *See* Herrick Agreement ¶ 2; Sanchez Agreement ¶ 2. In subpart (b) of the same paragraph, however, Neilen agrees to pay each plaintiff $800 "representing alleged breach of contract damages." Herrick Agreement ¶ 2(b); Sanchez Agreement ¶ 2(b).

First, although the parties identify "separate consideration" for releasing the disputed "breach of contract claims," *see* Mot. ¶ 12, it is unclear whether that consideration corresponds to the plaintiffs' covenant not to sue for, and general release of, "any and all claims, actions, causes of actions, rights, demands, debts, [and] damages" accruing before "the date of the execution of this Agreement." Herrick Agreement ¶¶ 4–5; Sanchez Agreement ¶¶ 4–5. "FLSA settlement agreements accompanied by separate general releases can be approved where there is consideration beyond what the defendant is paying the plaintiff for the FLSA claims." *Gerrish v. Fuel4, LLC*, No. 8:24-CV-1662-SPF, 2025 WL 3620174, at *3 (M.D. Fla. Nov. 24, 2025). Here, the agreements do not suggest any distinction between the consideration, stating instead that plaintiffs make general releases "[i]n consideration for the payment of the $2500" representing unpaid wages, liquidated damages, breach of contract damages, and attorney's fees. *See id.* In any amended agreements, the parties should identify the separate consideration—beyond the amounts paid to resolve the FLSA claims—for the general release and covenant not to sue.

Second, the parties include a confidentiality provision in their publicly filed settlement agreements. *See* Mot. ¶ 13; Herrick Agreement ¶ 7; Sanchez Agreement ¶ 7. Courts routinely reject FLSA settlement agreements that include confidentiality provisions because they "contravene[] the legislative purpose of the FLSA and undermine[] the Department of Labor's regulatory

effort to notify employees of their FLSA rights." *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1242 (M.D. Fla. 2010); *but see O'Neal v. Am. Shaman Franchise Sys., Inc.*, 166 F.4th 1274, 1290 (11th Cir. 2026) (Rosenbaum, J., concurring) (suggesting that a settlement agreement resolving a "mixed FLSA and non-FLSA case" may include a confidentiality provision if the parties specify "separate consideration for [it]"). More to the point, though, "the filing of an FLSA settlement agreement on the public docket generally renders any confidentiality provision unenforceable." *Shavers v. Bros. Bless LLC*, No. 3:22-CV-1088-JBT, 2023 WL 11256795, at *1 n.1 (M.D. Fla. Aug. 9, 2023) (citing *DeGraff v. SMA Behav. Health Servs., Inc.*, 945 F. Supp. 2d 1324, 1330 (M.D. Fla. 2013)). Because the agreements can no longer be considered "confidential," the provisions are unenforceable. *See id.* In any amended agreements, the parties shall remove the confidentiality provision.

Accordingly, the following is **ORDERED**:

1. The Joint Motion for Approval of Settlement Agreement (Doc. 36) is **DENIED WITHOUT PREJUDICE.**

2. No later than **August 20, 2026**, the parties may file an amended motion and settlement agreements.

**ORDERED** in Tampa, Florida, on August 6, 2026.

Kathryn Kimball Mizelle

Kathryn Kimball Mizelle
United States District Judge